UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

**JOHN MARTIN BIGLER**,

                Plaintiff,                            **MEMORANDUM DECISION**
                                                **& ORDER**

           -against-                              19-CV-03568 (AMD)

**COMMISSIONER OF SOCIAL SECURITY**,

                Defendant.
-----------------------------------------------------------X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff seeks review of the Commissioner of Social Security's decision that he was not disabled for purposes of receiving disability benefits under the Social Security Act.  For the reasons set forth below, I remand the case for further proceedings.

## BACKGROUND

On November 12, 2014, the plaintiff, a 69-year-old former attorney with a history of scoliosis, filed a *pro se* application for disability benefits due to back and left shoulder pain, depression and fatigue beginning September 1, 2014.  (Tr. 27.)[1]  When his application was denied on January 15, 2015 (Tr. 70-77), he requested an administrative hearing.  (Tr. 78-80.) Administrative Law Judge ("ALJ") Alan B. Berkowitz held a hearing on March 2, 2017, at which the plaintiff and a vocational expert testified.  (Tr. 46-68.)

On April 10, 2017, ALJ Berkowitz issued a written decision finding that the plaintiff was not disabled because he still retained the residual functional capacity ("RFC") to perform sedentary work with some restrictions on bending, stooping, crouching, crawling, kneeling and

---

[1] The plaintiff practiced law until 2014, when he was suspended from the practice of law for two years for violating the Code of Professional Responsibility in connection with a probate matter.  His practice included elder law, trusts and estates and social security appeals.  After his suspension, he continued to work on disability cases and Medicaid planning, which he said did not require a license.  (Tr. 56.)

climbing, and if he took a two minute break every hour to reposition himself.  (Tr. 22-36.)  As a result, the ALJ concluded that although the plaintiff's "capacity to perform work is affected," he could resume working as a lawyer.  (Tr. 32-33.)  The Appeals Council denied the plaintiff's request for review on November 22, 2017.  (Tr. 1-4.)  The plaintiff, now represented by counsel, commenced this action and moved for judgment on the pleadings.  (ECF No. 9.)  The defendant cross-moved for judgment on the pleadings.  (ECF No. 12.)

## LEGAL STANDARD

A district court reviewing a final decision of the Commissioner "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).  If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld.  42 U.S.C. § 405(g).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (quotation marks omitted).

The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but not "[w]here an error of law has been made that might have affected the disposition of the case."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (citations omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).  Moreover, the district court should

2

remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citations omitted).

## DISCUSSION

The plaintiff's primary challenge to the ALJ's decision is that the ALJ did not give controlling weight to the opinions of his two treating physicians, Dr. Goldman and Dr. Biagiotti, and, as a consequence, did not give the requisite consideration to the plaintiff's statements about his symptoms. I agree that remand is appropriate on both grounds.

### I.   The Plaintiff's Treating Physicians

"The 'treating physician' rule requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record." *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order).[2] If the ALJ decides that a treating physician's opinion does not merit controlling weight, he must "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted); *accord* 20 C.F.R. § 404.1527(c)(2). The factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

---

[2] The treating physician rule applies because the plaintiff filed his claim before March 27, 2017. *See* 20 C.F.R. § 404.1527.

3

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. § 404.1527(d)(2).

Failure to provide "good reasons" for the weight assigned to a treating physician's opinion

constitutes grounds for remand.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also*

*Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the

ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground

for remand.") (internal citations omitted).

   Under 20 C.F.R. § 404.1527(a)(2), medical opinions are "statements from acceptable

medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s), including . . .  symptoms, diagnosis and prognosis, what [the claimant] can still

do despite impairment(s), and . . . physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).

Medical opinions are different than treatment notes or diagnostic tests, which "merely list the

symptoms detailed by the [p]laintiff and/or the tests performed by the doctor."  *Wider v. Colvin*,

245 F. Supp. 3d 381, 390-91 (E.D.N.Y. 2017); *see also Bailey v. Berryhill*, No. 15-CV-9287,

2017 WL 1102671, at *2 (S.D.N.Y. Mar. 24, 2017) (medical opinions are distinct from

"treatment notes documenting [p]laintiff's medical history, describing the results of

examinations and medical tests, and describing treatments and treatment plans").  Instead,

medical opinions "must reflect a judgment 'with regard to the nature and severity of plaintiff's

limitations beyond a mere diagnosis and description of symptoms.'"  *Bailey*, 2017 WL 1102671,

at *2 (quoting *Merriman v. Comm'r of Soc. Sec.*, No. 15-CV-2413, 2015 WL 5472934, at *20

(S.D.N.Y. Sept. 17, 2015)).

   Internist Emilio Biagiotti first treated the plaintiff in 1994 and diagnosed him with a

herniated disc and back and shoulder pain.  (Tr. 224-230.)[3]  In late 2013 and early 2014, the

---

[3] The record includes treatment records from 2015.

plaintiff's back and shoulder pain began to worsen, and he started having "trouble concentrating." (Tr. 57-58.)[4] In September of 2014, he consulted with orthopedic surgeon Donald Goldman, who continued to treat the plaintiff for the next three years. (Tr. 201.) Dr. Goldman noted that the plaintiff's medical history included progressive back pain, left shoulder pain and "extensive surgery on his spine for scoliosis" in his twenties, including the placement of a steel surgical device in the plaintiff's spine. (Tr. 201-02.)[5] Dr. Goldman's examination showed that the plaintiff had pain, stiffness and limited range of motion in his left shoulder and spine, as well as atrophy, weakness, positive straight leg raising and decreased hip motion. Because of these conditions, the plaintiff could not bend, twist, stoop, flex or extend his back, carry anything heavier than five or ten pounds, or sit for more than twenty to twenty-five minutes at a time. Dr. Goldman concluded that the plaintiff was disabled. (Tr. 202.)

CT imaging of the plaintiff's lumbar spine showed scoliosis with posterior fusion, multiple bulging discs at L2-3, L3-4, L4-5, and L5-S1, apparent disc extrusion at L4-5 compressing the descending right L5 and exiting L4 nerve roots and grade 1 anterolisthesis. (Tr. 216-17.) A hip x-ray taken on the same day showed that the plaintiff had osteoporosis and disc disease with degenerative changes in his lumbar spine. (Tr. 218.) Imaging of the plaintiff's thoracic spine showed "pronounced reverse S-shaped thoracic scoliosis" with left-sided posterior fixation hardware, and multilevel degenerative disc disease, most pronounced at T5-6, without high-grade spinal canal stenosis. (Tr. 212.) A November 3, 2014 CT scan of the plaintiff's left shoulder showed evidence of "severe degenerative changes" with a "bone-on-bone" appearance,

---

[4] These symptoms coincided with the plaintiff's suspension from the practice of law. *See In re John M. Bigler*, No. 2010-10148, 2014 WL 4211139 (2d Dept. Aug. 27, 2014). The plaintiff testified that he had been planning to sell his law practice before his license was suspended because his pain was interfering with his ability to work. He sold his practice shortly after his license was suspended.
[5] According to Dr. Goldman, this surgery is no longer recommended for scoliosis, and probably contributed to the plaintiff's limited range of motion, osteoarthritis and pain.

5

"complete loss of articular cartilage," degenerative changes consistent with high-grade rotator cuff tears, and a cystic lesion related to bursitis.  (Tr. 209.)

Dr. Goldman treated the plaintiff from 2014 through 2017.  He diagnosed the plaintiff with advanced osteoarthritis in his left shoulder, thoracic scoliosis and accompanying surgery, central canal stenosis, neural foraminal stenosis and osteoarthritis of the spine.  (Tr. 289.) According to Dr. Goldman, the plaintiff's condition was "chronic degenerative and will continue to deteriorate," (Tr. 202), and that, in addition to restrictions on standing, sitting, bending, kneeling, and squatting, the plaintiff could "never" perform fine finger movements, or pushing and pulling with his left hand.  (Tr. 292.)  He also opined that the plaintiff's condition was unchanged and that he was not expected to improve.  (Tr. 292.)  As of his last visit with the plaintiff in March of 2017,  Dr. Goldman reaffirmed that the plaintiff's prognosis was "poor," and that with "a full spinal fusion with steel implants for an advanced scoliosis that has now developed advanced arthritis[,] the prognosis for any type of recovery is poor.  There is no treatment, therapy, medication, acupuncture, or Zen Buddhism that will improve his spinal motion or relieve his pain."  (Tr. 289.)

The ALJ gave little weight to Dr. Goldman's opinion, finding only that it was "not supported by objective medical evidence," "largely conclusory in nature," and not consistent with the plaintiff's "wide range of daily activities."  (Tr. 30.)  But the record does not support this finding.[6]  Dr. Goldman examined the plaintiff over the course of a three-year period and based his opinions on physical examinations of the plaintiff, his medical history and extensive imaging of the plaintiff's neck, spine, hips and shoulder.  In follow-up appointments, Dr.

---

[6] The ALJ did not have to give weight to Dr. Goldman's conclusion that the plaintiff could not work.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("The ultimate finding of whether a claimant is disabled and cannot work" is to be made by the ALJ, and "[a] treating physician's statement that the claimant is disabled cannot itself be determinative.").

Goldman concluded that the plaintiff was fully disabled, that his prognosis was poor, that he had a visible (and worsening) spinal deformity, and that the plaintiff's condition would continue to deteriorate.  Because the record supported Dr. Goldman's opinion that the plaintiff's condition was serious and debilitating, and kept him from returning to his prior employment, the ALJ's decision to afford them "little weight" is not supported by substantial evidence.[7]  *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (treating physician rule requires that a treating physician's opinion be given "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record) (internal citations omitted); *see also Fontanez*, 2017 WL 4334127, at *18.

In the ALJ's view, Dr. Goldman's opinion did not merit controlling weight because the "conservative treatment" for the plaintiff's alleged back and left shoulder condition" (Tr. 32) did not square with Dr. Goldman's prognosis about the plaintiff's condition.  But contradictory evidence must be "overwhelmingly compelling in order to overcome a medical opinion."  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citations and quotations omitted).  That standard was not met here.  The plaintiff tried to manage his pain not just with ibuprofen, as the ALJ found, but with massages, stretching exercises and a transcutaneous electrical nerve stimulation ("TENS") unit, "which administers electrical stimulation to the nervous system for pain relief." *Tutuianu v. Apfel*, 99-CV-5214, 2000 WL 1240069, at *2 (E.D.N.Y. Aug. 23, 2000).[8]  In describing the plaintiff's treatment plan as "conservative," the ALJ did not discuss any of the

---

[7] The ALJ appears to have given "great weight" to the opinion of consultative internist Dr. Carol Sasportas, who examined the plaintiff once, solely because she based her opinion "on a complete physical examination."  (Tr. 30-31).  This was not a sufficient reason to discount the opinions of the plaintiff's two treating physicians, both specialists who examined the plaintiff multiple times.  On remand, the ALJ should reevaluate this decision, and explain the basis for it.

[8] The plaintiff testified that he had also received steroid injections.

additional treatments his doctors prescribed.  Dr. Goldman did not recommend any other treatment, including surgery, because, after treating the plaintiff for three years, he concluded that "no treatment, therapy, [or] medication . . . will improve his spinal motion or relieve his pain."  (Tr. 289.)  The record established a reason for the plaintiff's conservative treatment, and the ALJ's conclusion that this treatment plan meant that the plaintiff was not disabled was inconsistent with the record.

Dr. Biagiotti, an internist, also treated the plaintiff beginning in 1994, although the record contains only a disability claim form and a medical evaluation that Dr. Biagiotti completed in January of 2015.  (Tr. 224-230.)  He diagnosed the plaintiff with spinal fusion, herniated discs in his back, and shoulder and back pain, and concluded that the plaintiff was severely and permanently impaired with "[n]o improvement expected."  (Tr. 228.)  The ALJ appears to have assigned Dr. Biagiotti's opinion less weight because he believed that Dr. Biagiotti was a one-time medical examiner, rather than a treating physician.  (Tr. 30-33.)  However, this was also error, and is itself a separate basis for remand.  The ALJ should reconsider the weight Dr. Biagiotti's opinion merits given the length of his treating relationship with the plaintiff, and the fact that Dr. Biagiotti's diagnosis and assessment of the plaintiff were consistent with Dr. Goldman's findings.[9]

Both physicians documented serious limitations in the plaintiff's ability to stand, walk and resume working as a lawyer, opinions that are not consistent with the ALJ's findings and which merited greater weight given the length of their relationship with the plaintiff, their

---

[9] To the extent the ALJ needs additional records from Dr. Biagiotti, who treated the plaintiff for more than twenty years, in order to evaluate his opinion and accord it the appropriate weight, he should request them.  "Social Security proceedings are inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), and an "ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks and citation omitted).

8

expertise, and the objective medical evidence that supported their opinions.  In light of this evidence, "[i]t is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his [or her] determination."  *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004); *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion[.]"); *Fontanez*, 2017 WL 4334127, at *18 (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand") (internal citations omitted).  On remand, the ALJ should reconsider the appropriate weight to assign to both physicians' opinions.

## II.    The Plaintiff's Subjective Statements

The plaintiff argues that the ALJ should not have discounted the plaintiff's subjective statements about his condition.  "Administrative law judges (who usually have the only opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying) obviously are best-positioned" to evaluate the plaintiff's subjective statements. *Whiting v. Astrue*, No. 12-CV-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013), *report and recommendation adopted*, No. 12-CV-274, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013) (citations omitted); *see also Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1982) ("It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."); *see also Snell v. Apfel,* 177 F.3d 128, 135 (2d Cir. 1999) (holding that the ALJ is in the best position to assess the claimant's credibility).  While an ALJ must take a claimant's reports of pain and other limitations into account, he is "not required to accept the claimant's subjective complaints without question."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ first must

determine that there is a "medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms[.]" 20 C.F.R. § 404.1529(b). If the ALJ concludes that a claimant has an underlying impairment, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms on the claimant's ability to work. 20 C.F.R. § 404.1529(c). If the "allegations of pain 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306 (E.D.N.Y. 2017) (citations omitted); *see* 20 C.F.R. § 404.1529(c)(4).

In evaluating the plaintiff's subjective statements, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) any treatment, other than medication, the claimant has received; (6) any other measures the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); *see also Gallagher*, 243 F. Supp. 3d at 306. An ALJ need not review each factor in his opinion. *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (upholding an ALJ's determination even though it "did not include an explicit function-by-function analysis of all possible limitations, but did address all relevant limitations.")

The ALJ concluded that the plaintiff's account of his daily activities, treatment and work history did not support his claims of disability. The plaintiff, who lives with his wife in Honduras, reported that he could drive, take care of himself, pick up groceries and do basic household chores. (Tr. 233.) He passes the time by reading the news, watching television and

10

going on short walks.  (Tr. 65-66.)[10]  Evidence that the plaintiff "gamely chooses to endure pain

in order to pursue important goals,' such as attending church and . . . shopping for his family" is

not evidence that the plaintiff "is capable of working." *Balsamo v. Chater*, 142 F.3d 75, 81-82

(2d Cir. 1998) (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)).  "[A] finding that a

claimant is capable of undertaking basic activities of daily life cannot stand in for a

determination of whether that person is capable of maintaining employment, at least where there

is no evidence that the claimant 'engaged in any of these activities for sustained periods

comparable to those required to hold a sedentary job.'" *Vasquez v. Barnhart*, No. 02-CV-6751,

2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004) (quoting *Carroll v. Sec'y of Health and

Human Servs.*, 705 F.32d 638, 643 (2d Cir. 1983).  Even though the plaintiff could tend to his

day-to-day needs, none of these activities suggests that he could resume "any of these activities

for sustained periods comparable to those required to hold a sedentary job." *Balsamo*, 142 F.3d

at 81 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983)

(quotation marks omitted)).[11]

     Similarly, as noted earlier, the ALJ's conclusions about the plaintiff's conservative pain

treatment regimen and work history were also not supported by substantial evidence.  As an

initial matter, the ALJ erred in stating that the plaintiff relied exclusively on "over the counter

---

[10] The plaintiff's description of his day-to-day activities—basic household chores, reading books and going on short walks—was consistent with Dr. Goldman's conclusions about the plaintiff's limitations. *See Murdaugh v. Sec. of Dep't of HHS of U.S.*, 837 F.2d 99, 102 (2d Cir. 1988) (the fact that the plaintiff "waters his landlady's garden, occasionally visits friends and is able to get on and off an examination table can scarcely be said to controvert the medical evidence" of disability).

[11] The ALJ's credibility determination was "further flawed because the ALJ did not give controlling weight to [the treating physician's] medical opinion, and '[t]he ALJ's proper evaluation of [the treating physician's] opinions [will] necessarily impact the ALJ's credibility analysis.'" *Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 628 (E.D.N.Y. 2017) (quoting *Mortise v. Astrue*, 713 F.Supp.2d 111, 124-25 (N.D.N.Y. 2010)).

Advil for pain," (Tr. 32), because the record showed that the plaintiff also did exercises that Dr.
Goldman prescribed, got massages and used a TENS unit.  Additionally, the record demonstrated
that the plaintiff's pain was not well-managed, and that his treating physician had concluded that
conservative treatment was the only option for managing his symptoms.  In light of this
treatment history, and a specialist's conclusion that surgery could not help the plaintiff, an ALJ
"may not impose [ ] [his respective] notion that the severity of a[n] . . . impairment directly
correlates with the intrusiveness of the medical treatment ordered . . . ."  *Burgess v. Astrue*, 537
F.3d 117, 129 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000)).
While, according to the plaintiff's work history report, he stopped working because he sold his
practice, he testified that he decided to sell the practice because of his worsening pain, testimony
supported by the contemporaneous evaluations of two treating physicians as well as imaging
conducted at that time.  Accordingly, the ALJ's credibility determination was not supported by
substantial evidence, and should also be revisited on remand.

## CONCLUSION

The defendant's motion for judgment on the pleadings is denied, and the case is
remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        September 29, 2020

12